J-S40045-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SOLOMON MCKEEVER ELLISON, III | : | |
| | : | |
| Appellant | : | No. 305 EDA 2020 |

Appeal from the PCRA Order Entered December 23, 2019
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0000167-2014

BEFORE:   SHOGAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                                Filed: April 8, 2021

Appellant, Solomon McKeever Ellison, III, appeals from the order dismissing his first petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

The PCRA court described the relevant factual background of this case as follows:

> The incident in question occurred on December 9, 2013. [Appellant] and [R.S. ("R.S." or "the Victim")] met online through a [dating] website.  The Victim testified she went onto the website because she needed money.  She began talking to [Appellant] frequently during the few days prior to the incident in question. At some point they discussed her financial issues and [Appellant] offered to pay her money for oral sex.  On the afternoon of December 9th, the Defendant went to the Victim[']s house.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

Initially, [Appellant] and the Victim sat down to talk and smoke marijuana that she had provided. After smoking, [Appellant] took out some money to pay the [V]ictim for the agreed upon sexual contact, however, he only produced forty dollars even though they previously agreed to a payment of a hundred dollars. When the Victim refused to comply with [Appellant's] request for oral sex, he grabbed her hair, pulled her face down to his crotch, and unbuttoned his pants. He also pulled out a box cutter. The Victim began to perform oral sex. While she was performing oral sex he put the box cutter to the Victim's chin, and then he cut the bottom of her chin which she did not notice until she saw blood on his pants.

She then backed away to see where the blood had come from and a fight between the two ensued. [Appellant] attempted to drag the Victim up the stairs, however, the Victim resisted. When she resisted by screaming and pushing him, [Appellant] lifted her up and then slammed her onto the floor, as well as elbowing her in the face. When she was able to push him back again, he fled out through the back door. Then, the Victim asked for help from a neighbor and called the police. The fight resulted in multiple injuries for the Victim, including bruises and an injured hand from going through a window during the fight.

In addition to this conduct[, Appellant] also fled from the police when they attempted to arrest him.

PCRA Court Opinion, 4/20/20, at 2-3 (citations omitted).

Appellant proceeded to a jury trial in October 2015, at which he was represented by Denis Leonard, Esquire. At the conclusion of trial, the jury convicted Appellant of involuntary deviate sexual intercourse, sexual assault, indecent assault, aggravated assault with a deadly weapon, possession of an instrument of crime, false identification to law enforcement authorities, and unsworn falsification to authorities.[2] The trial court sentenced Appellant to an

---

[2] 18 Pa.C.S. §§ 3123(a)(1)-(2), 3124.1, 3126(a)(1)-(3), 2702(a)(4), 907(b), 4914(a), and 4904(a)(1), respectively.

aggregate term of confinement of 30 to 60 years, followed by 2 years of probation.

Appellant appealed, and on September 26, 2017, this Court affirmed the judgment of sentence. *Commonwealth v. Ellison*, No. 743 EDA 2016 (Pa. Super. filed September 26, 2017). Appellant filed a petition for allowance of appeal with our Supreme Court, which the Court denied on May 7, 2018. *Commonwealth v. Ellison*, 185 A.3d 278 (Pa. 2018). Appellant did not seek review of his judgment with the United States Supreme Court.

On April 26, 2019, Appellant filed this timely PCRA petition.[3] An evidentiary hearing was held on the PCRA petition on September 13, 2019 at which Appellant's trial counsel testified. On December 23, 2019, following the submission of post-hearing briefs, the PCRA court entered an order dismissing the petition. Appellant thereafter filed a timely appeal.[4]

---

[3] Appellant's judgment of sentence became final on Monday, August 6, 2018, upon the expiration of the time for filing a petition for writ of *certiorari* with the United States Supreme Court. *See* 42 Pa.C.S. § 9545(b)(3) (judgment becomes final at conclusion at expiration of time for seeking review, including discretionary review at U.S. Supreme Court); U.S.Sup.Ct.R. 13 (petition for writ of *certiorari* must be filed within 90 days of judgment); U.S.Sup.Ct.R. 30 (where last permitted day for filing falls on weekend, filing deadline shall be extended to next business day). As Appellant's petition was filed within one year of August 6, 2018, the petition was timely. *See* 42 Pa.C.S. § 9545(b)(1) (PCRA petition permitted within one year of the date judgment becomes final).

[4] On January 24, 2020, Appellant filed a statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). The PCRA court entered its opinion on April 20, 2020.

Appellant raises the following issues on appeal:

I. Was counsel ineffective under the Sixth Amendment of the U.S. Constitution and Article [IX, S]ection 1[5] and Article [V, Section] 9 of the Pennsylvania Constitution for not making the Commonwealth meet their burden of proof regarding the admissibility of prior bad act evidence and for instead stipulating to its admission? Alternately, did the trial court err in finding that the [Pennsylvania Rule of Evidence] 404(b) burden was met by the Commonwealth in relation to the facts of this case and counsel at trial and was counsel on direct appeal ineffective for failing to preserve and assert the trial court error?

II. Was counsel ineffective under the Sixth Amendment of the U.S. Constitution and Article [IX, S]ection 1 and Article [V, Section] 9 of the Pennsylvania Constitution for entering into a factually misleading and prejudicial stipulation?

III. Was counsel ineffective under the Sixth and Fourteenth Amendments of the U.S. Constitution and Article [IX, S]ection 1 and Article [V, Section] 9 of the Pennsylvania Constitution for failing to object to the prosecutor's improper comments during closing argument and ask for appropriate relief?

IV. Were Appellant's constitutional rights to due process of law and a fair trial [] violated by the cumulative impact of trial counsel[']s ineffectiveness in violation of the Sixth Amendment?

Appellant's Brief at 3 (suggested answers omitted).

We review the denial of a PCRA petition to determine whether the record supports the PCRA court's findings and whether its decision is free of legal error. **Commonwealth v. Brown**, 196 A.3d 130, 150 (Pa. 2018). The PCRA court's credibility determinations are binding on this Court when supported by

---

[5] Appellant cites Article IX, Section 1 of the Pennsylvania Constitution, which requires the General Assembly to establish local government within the Commonwealth, but it appears that Appellant intended to reference Article I, Section 9 of our Constitution, which sets forth the rights of accused in criminal prosecutions, including the right to counsel.

the record. *Id.* We review the PCRA court's findings and the evidence of record in the light most favorable to the Commonwealth as the winner at trial. *Id.* We may affirm the PCRA court's ruling on any grounds that support it. *Commonwealth v. Smith*, 194 A.3d 126, 132 (Pa. Super. 2018).

Appellant asserts claims of ineffective assistance of counsel. In reviewing these claims, we begin our analysis with the presumption that counsel has rendered effective assistance. *Commonwealth v. VanDivner*, 178 A.3d 108, 114 (Pa. 2018). To overcome that presumption, the defendant must establish each of the following three elements:

> (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error[.]

*Id.* Boilerplate allegations are insufficient to meet the petitioner's burden of establishing ineffective assistance under this standard. *Commonwealth v. Chmiel*, 30 A.3d 1111, 1128 (Pa. 2011) (citation omitted).

"Arguable merit exists when the factual statements are accurate and could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination." *Commonwealth v. Urwin*, 219 A.3d 167, 172-73 (Pa. Super. 2019) (citation omitted).

> With regard to the second, reasonable basis prong, we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis. We will conclude that counsel's chosen strategy lacked a reasonable basis only if Appellant proves that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.

- 5 -

*Chmiel*, 30 A.3d at 1127 (internal citations and quotation marks omitted).

To satisfy the prejudice prong of the ineffective assistance test, the petitioner must prove that "there is a reasonable probability that, but for counsel's error, the outcome of the trial would have been different." *Commonwealth v. Jones*, 210 A.3d 1014, 1019 (Pa. 2019). As our Supreme Court has explained, this "actual prejudice" standard is "more exacting" than the harmless error standard applied on direct review to a claim that the trial court erred in taking or failing to take certain action:

> The harmless error standard [] states that whenever there is a reasonable possibility that an error might have contributed to the conviction, the error is not harmless. This standard, which places the burden on the Commonwealth to show that the error did not contribute to the verdict beyond a reasonable doubt, is a lesser standard than the [actual] prejudice standard, which requires the defendant to show that counsel's conduct had an actual adverse effect on the outcome of the proceedings. This distinction appropriately arises from the difference between a direct attack on error occurring at trial and a collateral attack on the stewardship of counsel. In a collateral attack, we first presume that counsel is effective, and that not every error by counsel can or will result in a constitutional violation of a defendant's Sixth Amendment right to counsel.

*Commonwealth v. Spotz,* 84 A.3d 294, 315 (Pa. 2014) (internal citations, quotation marks, brackets, and emphasis omitted).

In his first appellate issue, Appellant argues that the PCRA court erred in denying his claim that trial counsel was ineffective for stipulating to the admission of prior bad act evidence concerning Appellant's 2008 convictions of attempted indecent assault and aggravated assault with a deadly weapon. The Commonwealth first stated its intention to admit this prior bad act

evidence at an August 28, 2014 hearing regarding the Commonwealth's motion for joinder of the present case with another matter docketed at CP-23-CR-0000527-2014 ("No. 527-14"), in which Appellant was also charged with perpetrating a separate sexual assault. The trial court denied the joinder motion, but stated that if it permitted the introduction of Appellant's 2008 convictions pursuant to a forthcoming Pennsylvania Rule of Evidence 404(b) motion in either the present case or in No. 527-14, that the evidence would be likely admissible in the other case. N.T., 8/28/14, at 19-20.[6]

On December 12, 2014, the trial court held a further pre-trial hearing for the instant case and No. 527-14. In addition to discussing discovery and scheduling issues, the trial court heard oral argument on the Commonwealth's Rule 404(b) motion to admit the 2008 conviction in No. 527-14. The trial court granted the Commonwealth's Rule 404(b) motion in No. 527-14, and Appellant proceeded to trial in that case in June 2015, four months prior to the trial in the instant case. N.T., 9/13/19, at 6, 35, 39. Appellant also entered into a stipulation at trial regarding the bad act evidence in No. 527-14, but noted his objection on the record when the stipulation was admitted. *Id.* at 36-37, 39. Appellant's trial in No. 527-14 resulted in a hung jury, and

---

[6] The trial court stated that "if the 404(b) is proper it's probably proper in both cases" and further that "I think it would be hard to parse them if it's a prior bad act that's admissible in one, I would think it's going to be admissible in both of them." N.T., 8/28/14, at 19-20.

that case was ultimately resolved through a plea agreement. *Id.* at 6, 35-36, 39.

While, as discussed, the Commonwealth filed a Rule 404(b) motion in No. 527-14, it did not file a motion to admit evidence of Appellant's 2008 sexual assault conviction in the instant case. Instead, Appellant entered into the same stipulation as he had in No. 527-14, without noting an objection. N.T., 10/15/15, at 246-47; Trial Exhibit C-37; *see also* N.T., 9/13/19, at 39. The stipulation provided as follows:

> The Commonwealth and the defense agree that on June 8th, 2008, at approximately 11:00 p.m., [Appellant] was present in a park located near the 600 block of Poplar Street in Sharon Hill, Delaware County, Pennsylvania. At that time, a 17-year-old African American female was walking through the park. [Appellant] engaged the female in brief conversation and continued to follow her through the park. In the area of 601 Poplar Street, [Appellant] grabbed the female and held a knife to her neck. [Appellant] then pulled the female victim into a driveway behind the 200 block of Gavin Boulevard and forcibly unbuttoned her pants. The victim pleaded with [Appellant] to stop and attempted to use her cell phone to call for help. [Appellant] then pushed her into a row of bushes and stated I'm going to kill you if you don't shut up. At that time, a rear light of the nearby house came on, prompting the victim to scream and [Appellant] to flee the area on foot. Sharon Hill Police responded moments after a 911 call and located [Appellant] in the area of Woodland Avenue and Calcon Hook Road, a short distance from the scene of the attack. Sharon Hill Police also located a knife in the immediate vicinity of the scene shortly before locating [Appellant]. The female victim positively identified [Appellant] as her attacker, and [Appellant] was placed under arrest. On April 27th, 2009, in connection with the above incident, [Appellant] entered a guilty plea to the charges of Attempted Indecent Assault and Aggravated Assault with a Deadly Weapon. Both [Appellant] and [the] Commonwealth agree that the above facts are to be considered by the jury as undisputed facts for the purposes of its deliberations in the case now before it.

N.T., 10/15/15, at 246-47.

Appellant contends that trial counsel was ineffective for entering into this stipulation because the Commonwealth could not have met its burden of proving that 2008 conviction fell within the common plan or scheme exception to Rule 404(b). Appellant distinguishes the earlier case from this one as the earlier crime involved an approach of a random woman in a public park who he pulled into the bushes and attempted to force into vaginal sex at knife-point with a threat that he would kill her. By contrast, R.S. was known to Appellant, the incident occurred at R.S.'s home, the sexual contact involved negotiated oral sex, the weapon was a box cutter rather than a knife, and Appellant did not threaten to kill R.S.

Appellant contends that trial counsel had no reasonable basis for stipulating to the admission of the prior bad act evidence rather than objecting to its admission and requiring the Commonwealth to prove a common scheme or motive between the two incidents. Appellant further argues that he was prejudiced because the Commonwealth stressed that Appellant was a repeat sex offender during opening and closing argument. *See* N.T., 10/14/15, at 127-28; N.T., 10/16/15, at 37-38.[7]

_____

[7] Appellant also argues that counsel in his direct appeal was ineffective for failing to raise the Rule 404(b) issue on appeal. Where a petitioner presents an ineffective assistance claim as to both trial counsel and appellate counsel, he must prove the three prongs of the ineffectiveness test, including that the legal claim underlying the ineffectiveness claim has arguable merit, as to each layer of representation. *Commonwealth v. Montalvo*, 205 A.3d 274, 286

In addressing this claim, the PCRA court concluded that while the claim had arguable merit, trial counsel had a reasonable basis for entering into the stipulation regarding the Rule 404(b) evidence based on his experience in the No. 527-14 trial where trial counsel stipulated to the convictions in order to avoid live testimony. PCRA Court Opinion, 4/20/20, at 5-6. Noting that trial counsel was successful in avoiding conviction in No. 527-14 and that the trial court had indicated that it was likely to rule the same way on a Rule 404(b) motion in both cases, the PCRA court found that counsel's decision to stipulate to the 2008 assault was a reasonable tactic to lessen the impact of the prior bad act evidence. *Id.* at 5-7.

To the extent Appellant's ineffectiveness claim is based on trial counsel's failure to object to the admission of the prior bad act evidence, the PCRA court found that Appellant was not prejudiced by the stipulation because the evidence was otherwise admissible, the stipulation did not impede Appellant's defense that no assault occurred, and the court's instructions minimized the impact of the stipulation. *Id.* The PCRA court concluded that although the

---

(Pa. 2019). As Appellant acknowledges in his brief, trial counsel did not oppose the admission of his 2008 convictions but instead stipulated to those convictions. Trial counsel's failure to lodge an objection to the introduction of this evidence therefore waived the claim for Appellant's direct appeal. Pa.R.A.P. 302(a); *Commonwealth v. Radecki*, 180 A.3d 441, 455 (Pa. Super. 2018). Appellate counsel was thus not ineffective for failing to raise this issue in Appellant's direct appeal. *See Commonwealth v. Spotz*, 18 A.3d 244, 278 (Pa. 2011) ("There is no merit to [a] claim that appellate counsel was ineffective for failing to raise, on direct appeal, a waived claim of trial court error . . . .").

2008 incident and the instant case are distinguishable on certain facts, trial counsel did not forfeit Appellant's option for reversal on appeal given the deferential appellate standard applied to evidentiary determinations. *Id.* at 6-7.

Initially, we agree with the PCRA court that Appellant demonstrated arguable merit to his first ineffective assistance claim. Under Rule 404(b), evidence of a prior bad act "is not admissible for the sole purpose of demonstrating a criminal defendant's propensity to commit crimes," but may be "admissible in certain circumstances where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character." *Commonwealth v. Tyson*, 119 A.3d 353, 358 (Pa. Super. 2015) (*en banc*) (citations omitted). Relevant here, prior bad act evidence may be admitted where the evidence demonstrates a common plan or scheme.[8]

> When ruling upon the admissibility of evidence under the common plan exception, the trial court must first examine the details and surrounding circumstances of each criminal incident to assure that the evidence reveals criminal conduct which is distinctive and so nearly identical as to become the signature of the same perpetrator. Relevant to such a finding will be the habits or patterns of action or conduct undertaken by the perpetrator to commit crime, as well as the time, place, and types of victims typically chosen by the perpetrator. Given this initial

---

[8] At trial, the trial court instructed the jury that evidence of the 2008 conviction was admitted to show "motive, intent, common scheme, lack of mistake, and identity." N.T., 10/16/15, at 65; *see also* N.T., 10/15/15, at 251. However, before the PCRA court and this Court, the parties focus solely on whether the evidence of the conviction was properly introduced under the common plan or scheme exception. *See, e.g.*, N.T., 9/13/19, at 10. We agree with the parties that none of the other Rule 404(b) exceptions are applicable here.

determination, the court is bound to engage in a careful balancing test to assure that the common plan evidence is not too remote in time to be probative. If the evidence reveals that the details of each criminal incident are nearly identical, the fact that the incidents are separated by a lapse of time will not likely prevent the offer of the evidence unless the time lapse is excessive. Finally, the trial court must assure that the probative value of the evidence is not outweighed by its potential prejudicial impact upon the trier of fact. To do so, the court must balance the potential prejudicial impact of the evidence with such factors as the degree of similarity established between the incidents of criminal conduct, the Commonwealth's need to present evidence under the common plan exception, and the ability of the trial court to caution the jury concerning the proper use of such evidence by them in their deliberations.

*Id.* at 358-59 (citation omitted).

In determining the connection between the prior crime and the charged offense, the Commonwealth must show more than that the defendant committed crimes "of the same general class." *Id.* at 360 (citation omitted). The similarities between the prior bad act and the charged crime must not be "confined to insignificant details that would likely be common elements regardless of who had committed the crimes, but rather [must] truly represent [the defendant's] signature." **Commonwealth v. Hughes**, 555 A.2d 1264, 1283 (Pa. 1989) (internal citation omitted). As we have explained, the criminal acts must be so related that "proof of one tends to prove the other[]." **Commonwealth v. Ross**, 57 A.3d 85, 104 (Pa. Super. 2012) (*en banc*) (citation omitted).

In **Tyson**, the defendant was charged with sexually assaulting the victim while she was sleeping and the Commonwealth sought to introduce evidence of a prior assault nine years prior on the theory that they shared a common

- 12 -

scheme or plan. 119 A.3d at 356. We held that the Commonwealth had demonstrated many overlapping characteristics between the two assaults, including that in both cases the defendant "was acquainted with the victim— a black female in her twenties—and he was an invited guest in the victim's home." *Id.* at 360-62. In addition, in each case the defendant "was aware that each victim was in a weakened or compromised state[, e]ach victim ultimately lost consciousness[, and] the victim awoke in her bedroom in the early morning hours to find [the defendant] having vaginal intercourse with her." *Id.* at 360. We therefore concluded that the Commonwealth did "not merely show [the defendant] sexually assaulted two different women or that [his] actions are generically common to many sexual assault cases" but rather that the criminal conduct was "sufficiently distinctive to establish [that the defendant] engaged in a common plan or scheme." *Id.*

By contrast, in *Ross*, we held that the Commonwealth had not shown the "close factual nexus" necessary to admit testimony of the defendant's three prior sexual assaults of women with whom he was involved in on-going romantic relationships in his instant trial for first-degree murder and sexual assault. 57 A.3d at 104-05. In particular, we noted that the three instances of domestic abuse were of a far lesser level of brutality than the charged conduct, the prior assaults were of the defendant's domestic partners while he met the murder victim on the night of her death, and the prior assaults occurred at home while the murder victim was assaulted and killed outside in a state park. *Id.* at 103-04.

- 13 -

The Commonwealth argues that there are numerous parallels between the present case and the 2008 case. First, in both cases, the victims were black, young adult women. Both offenses occurred in isolated places: an isolated park in the earlier case and an empty house in this case. Appellant used a cutting implement—a knife in the former case and a box cutter here—to threaten both victims. Finally, the Commonwealth contends that Appellant threatened the victims in similar ways, putting a knife to the victim's neck in the first case and stating "I'm going to kill you if you don't shut up," N.T., 10/15/15, at 246, and here placing a blade near R.S.'s face, informing her that he would "cut [her] pretty little face" and then in fact cutting her on the chin. *Id.* at 67.

The Commonwealth has identified several factual similarities between the 2008 assault and the current case that courts have previously recognized as important factors in determining whether a common plan or scheme exists. *See Commonwealth v. Elliott*, 700 A.2d 1243, 1250 (Pa. 1997) (finding that charged offense was sufficiently similar to three prior criminal acts where, *inter alia*, the victims were "all white women in their twenties"), *abrogated on other grounds by Commonwealth v. Freeman*, 827 A.2d 385 (Pa. 2003)); *Commonwealth v. May*, 656 A.2d 1335, 1341 (Pa. 1995) (common scheme established based on, among other similar factors, the defendant's use of small knife to stab victim in charged sexual assault and prior rape-assaults). However, there are several distinctions between the present case and the 2008 assault that leads us to the conclusion that the Commonwealth

could not have shown that the two assaults were part of a common plan or scheme. First, in 2008, Appellant unbuttoned the victim's pants in an apparent attempt to have vaginal sex with her, while in the present matter the sexual assault was restricted to oral sex. *Cf. Tyson*, 119 A.3d at 360 (noting factual overlap to show common plan or scheme between charged offense and prior assault based in part on fact that defendant attempted to have vaginal intercourse with both victims). In addition, the attempted sexual assault occurred outside in 2008, while here the assault took place inside of R.S.'s home. *Cf. Ross*, 57 A.3d at 103-04 (charged crime perpetrated outside was distinct from prior bad acts that took place inside of the home the defendant shared with victims).

Most importantly, the nature of Appellant's contact with the victim in the 2008 case was entirely different from his interactions with R.S. Appellant met R.S. on a dating website, exchanged messages and spoke with her on the telephone for several days, and she invited Appellant to her house as a guest. During the course of their interactions, R.S. discussed her financial difficulties and she agreed to perform oral sex on Appellant contingent on him paying her $100. On the other hand, in the 2008 case, Appellant approached the victim at random in a public park, engaged her in conversation, and then pulled her into a driveway and attempted to assault her.

In light of these key differences, we cannot conclude that the 2008 assault and the assault of R.S. were not merely offenses of the same type but were "so nearly identical as to become the signature of the same perpetrator."

***Tyson***, 119 A.3d at 359 (citation omitted). Therefore, the Commonwealth could not have shown that the two criminal acts were so substantially similar that the earlier offense was admissible under the common plan or scheme exception to Rule 404(b).[9]

With respect to the reasonable basis prong of the ineffective assistance of counsel test, the PCRA court correctly states that it is a reasonable trial tactic to stipulate to evidence that would have been admitted anyway in order to lessen its emotional impact on the jury. ***See Commonwealth v. Birdsong***, 24 A.3d 319, 335 (Pa. 2011). Trial counsel explained at the PCRA hearing that, based on his previous unsuccessful litigation of the Rule 404(b) motion and the trial court's statement that it would likely rule the same way in both cases, he decided to enter into the stipulation because he preferred that the prior crime be explained to the jury through "a piece of paper" rather than a live witness. N.T., 9/13/19, at 39-41.

However, as the PCRA court recognized, trial counsel's strategic error with respect to the Rule 404(b) evidence was in not opposing its admission in the first instance in order to at least preserve a potential appellate issue. Indeed, trial counsel offered no explanation for this lapse at the PCRA hearing, stating that he believed that the Commonwealth had filed its Rule 404(b) motion on both dockets and that counsel had argued the motion as to both

---

[9] Based on our analysis, we need not address the remaining factors under Rule 404(b) concerning the remoteness of the prior offense and the balance of probative and prejudicial value. ***Tyson***, 119 A.3d at 359.

cases. N.T., 9/13/19, at 7-8, 37. However, the Commonwealth's Rule 404(b) motion was filed only on the No. 527-14 docket and when oral argument was made on the motion in the trial court, the Commonwealth's arguments solely pertained to No. 527-14. N.T., 12/12/14, at 3-7. Furthermore, unlike in No. 527-14, trial counsel did not note his objection upon the admission of the stipulation of the prior bad acts, even though trial counsel acknowledged at the PCRA hearing that the 2008 incident was far more similar to the charged crimes in No. 527-14, which also involved an approach of a random woman in public and occurred in close proximity to the location of the 2008 assault. N.T., 9/13/19, at 46; N.T., 12/12/14, at 3-4. Therefore, we are constrained to conclude that Appellant has shown that trial counsel lacked a reasonable basis for not opposing the admission of Appellant's 2008 conviction.

Turning to the prejudice prong of the ineffective assistance of counsel test, we conclude that Appellant did not show a reasonable probability that counsel's error affected the jury's verdict as the Commonwealth proved its case beyond a reasonable doubt without the Rule 404(b) evidence.[10] At trial, R.S. testified that after she and Appellant smoked marijuana together, Appellant requested that she perform oral sex on him, but R.S. first demanded that he present the agreed upon $100. N.T., 10/15/15, at 64-66. Instead of producing the money, Appellant grabbed R.S.'s head, pulled out a box cutter

---

[10] As stated above, we may affirm the PCRA's determination on any grounds that support it. **Smith**, 194 A.3d at 132.

and told her he would "cut [her] pretty little face off" if she screamed. *Id.* at 66-67. Appellant then unbuttoned his pants, pulled R.S.'s head towards his lap, and she began to perform oral sex on him. *Id.* at 69-71. R.S. stopped performing the sex act, however, upon realizing that Appellant had cut her chin with the box cutter, and she began to cry and scream. *Id.* at 70, 72-73. Appellant responded by grabbing R.S.'s sweater that was on the chair, tying it around her arm, and dragging her with the sweater up the staircase of her home. *Id.* at 73-76. R.S. managed to break free and run back downstairs, but Appellant followed her, body slamming her to the ground and elbowing her in the face. *Id.* at 76-77. During the fight, R.S. broke a window near her front door with her hand while struggling to get away from Appellant. *Id.* at 77. Appellant ultimately fled from her house via the back door, breaking the door in the process. *Id.* at 86.

R.S.'s description of the sexual and physical assault at trial was corroborated by other evidence presented by the Commonwealth, including R.S.'s 911 call in which she reported that a man she met on a "website," who she "thought [] was cool," cut her face with a knife and "beat [her] up." *Id.* at 89-91; Trial Exhibits C-6, C-7. Officer Tina Landau of Lansdowne Borough Police Department recounted R.S.'s report of the assault given in the immediate aftermath of the incident, which was consistent with R.S.'s trial testimony. N.T., 10/15/15, at 169-74; *see also* Trial Exhibit C-30 (R.S.'s

- 18 -

written statement).[11]  The Commonwealth presented photographs of R.S.'s house, showing the broken window and other damage to her home as well as bloodstains on the railing and wall from when Appellant was attempting to drag R.S. upstairs.  N.T., 10/15/15, at 94-105; Trial Exhibits C-8 to C-15.  The Commonwealth also admitted photographs of R.S., showing bloodstains on her clothing, swelling in her face from where Appellant struck her with his elbow, and cuts to her chin and hand.  N.T., 10/15/15, at 106-10; Trial Exhibits C-16 to C-20.  R.S.'s medical records revealed that the cut to her chin required four stitches and that the swelling on the right side of her face was consistent with significant blunt force trauma.  N.T., 10/15/15, at 151-52; Trial Exhibits C-21 to C-24.  The Commonwealth also introduced as evidence R.S.'s sweater that police collected at the scene, which was knotted from Appellant tying it around her arm and stained with blood.  N.T., 10/15/15, at 73-75; Trial Exhibits C-5.

Appellant offered a different account of the events of December 9, 2013 in his testimony, stating that R.S. initiated sexual contact with him, but then ceased the contact after Appellant produced only $40 instead of the agreed-upon $100.  N.T., 10/15/15, at 273-76.  Appellant stated that he was not in

---

[11] The only material inconsistency between R.S.'s trial testimony and her report to Officer Landau was the fact that she omitted any mention of her agreement to offer sexual services to Appellant for money.  N.T., 10/15/19, at 192-93.  R.S. explained that she did not initially report this arrangement because she did not want anyone to look down on her decision to resort to prostitution after she had lost her job.  *Id.* at 125-26.

possession of a weapon, never threatened R.S., and never forced her to perform oral sex on him. *Id.* at 276-77, 289. Appellant testified that the fight began when R.S. nudged him so hard that he tripped and he pulled R.S. down onto the ground with him while attempting to maintain his balance. *Id.* at 277-80. R.S. then became enraged and Appellant was forced to throw her to the floor again, where he struck her on the face with his elbow. *Id.* at 281-82, 290. Appellant testified that he was able to escape through the back door when R.S. ran out the front door yelling for assistance. *Id.* at 282.

Appellant's account of the incident, however, was at odds with much of the other evidence presented in this case. Appellant did not offer any explanation for the bloodstains on the railing and wall leading upstairs or for R.S.'s knotted and blood-stained sweater that was collected from the scene; instead, Appellant simply denied tying anything around R.S.'s arm or attempting to drag her upstairs. *Id.* at 290. Appellant's denial of being in possession of a weapon was also contradicted by the testimony of Officer Christopher Karr, Jr. of the Upper Darby Police Department that upon Appellant's arrest after a long pursuit on foot, the officer asked him if he was in possession of any weapons and Appellant responded that he had dropped his knife during the chase. *Id.* at 228. Appellant's testimony that R.S. "injur[ed]" him by scratching him around the eyes during the scuffle was not supported by the records from his hospital visit after the incident, which reported that his face and skin appeared normal upon examination. *Id.* at 281, 296-98; Trial Exhibits C-38, C-39. Finally, Appellant's description of the

fight with R.S. did not explain how she received a cut on her chin that required four stitches.

In light of the overwhelming evidence supporting Appellant's convictions, we conclude that Appellant did not show that but for counsel's error, there was a reasonable probability that the outcome of the trial would have been different. *Jones*, 210 A.3d at 1019. Appellant's first appellate claim therefore fails.

Next, Appellant argues that trial counsel was ineffective for entering into a misleading stipulation regarding a juvenile adjudication to a crime of falsehood, or *crimen falsi*, and for failing to object to the prosecutor's characterization of this adjudication in closing argument. In 2006, Appellant was adjudicated delinquent on the offense of robbery of a motor vehicle, 18 Pa.C.S. § 3702(a), committed while he was a juvenile. At trial, Appellant stipulated to this conviction, which was admitted on rebuttal to Appellant's trial testimony; the stipulation that was admitted as an exhibit and read to the jury provided that Appellant "was arrested as a 16-year-old juvenile in connection with a robbery of a motor vehicle **at gunpoint**." N.T., 10/15/15, at 313 (emphasis added); *see also* Trial Exhibit C-40.[12] Appellant asserts

---

[12] We observe that Appellant's juvenile record report admitted at the PCRA hearing contains a hand-written note indicating that Appellant was adjudicated delinquent of conspiracy to commit robbery of a motor vehicle. *See* PCRA Hearing Exhibit P-1. Whether Appellant was adjudicated of the conspiracy offense or of the primary offense of robbery of a motor vehicle as he stipulated to at trial does not affect our analysis herein.

- 21 -

that the stipulation was "factually accurate" in that he was charged with several firearms offenses in connection with the 2006 incident, but "at the same time [] very misleading" based on the inclusion of the stipulated fact that the robbery occurred "at gunpoint." Appellant's Brief at 26; N.T., 10/15/15, at 313. Appellant contends that trial counsel knew that the firearms charges against Appellant were withdrawn and his conviction of robbery of a motor vehicle did not require proof that he used a weapon in connection with the offense. Therefore, Appellant argues that trial counsel was ineffective for stipulating to a fact that painted Appellant in a negative light and was irrelevant to his juvenile *crimen falsi* conviction.

Appellant argues that he was particularly prejudiced by the prosecutor's reference to the stipulation during closing argument:

> Normally, there's a bar on the prosecution being able to introduce evidence of prior convictions in a trial for any particular crime. But there is an exception to that rule when the prior conviction bears on the Defendant's credibility should he take the stand as a witness and our Courts have held that crimes of dishonesty or deceit come in because they bear on his credibility. **Our Courts have decided that when you take a gun and you point it at someone and** you take - **use it to take a car that doesn't belong to you, that bears on your credibility**. Perhaps that ought to be -- and our Courts have said perhaps that ought to be considered when you judge his testimony. Well, he did that and you should consider that.

N.T., 10/16/15, at 36-37 (emphasis added). At a side bar discussion following closing arguments, trial counsel raised the issue that the prosecutor's statement implied that Appellant was armed when he was not convicted of an offense involving a firearm, but the trial court concluded that the statement

was accurate based on the already admitted stipulation. *Id.* at 49-51. Trial counsel did not object on the record to the closing argument.

The PCRA court concluded that Appellant was not prejudiced by the *crimen falsi* stipulation because the only probative value of the robbery adjudication was to attack the credibility of Appellant, not whether or not a gun was used to perpetrate the robbery. PCRA Court Opinion, 4/20/20, at 8-9. The PCRA court noted that it is presumed that the jury followed the trial court's cautionary instruction regarding the relevance of the stipulation, which minimized any prejudicial effect of the stipulation. *Id.* at 9. The PCRA court further determined that trial counsel had a reasonable basis for not objecting to the prosecutor's closing argument that Appellant used a gun during the robbery as an objection would have emphasized a point that was not relevant. *Id.* at 8-9.

Pennsylvania Rule of Evidence 609 provides that "[f]or the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime . . . must be admitted if it involved dishonesty or false statement." Pa.R.E. 609(a). Robbery is included among the *crimen falsi* offenses that are admissible for impeachment purposes under Rule 609. ***Commonwealth v. Trippett***, 932 A.2d 188, 199-200 (Pa. Super. 2007). Furthermore, juvenile adjudications of *crimen falsi* are admissible for impeachment purposes against a criminal defendant in equal measure as adult convictions. Pa.R.E. 609(d); ***Commonwealth v. Hoover***, 107 A.3d 723, 732 (Pa. 2014). However, an arrest or charge related to a crime of dishonesty or

a falsehood that does not result in a conviction may not be used as a basis for impeachment. **Commonwealth v. Chmiel**, 889 A.2d 501, 534 (Pa. 2005); **Commonwealth v. Stokes**, 615 A.2d 704, 711 (Pa. 1992).

Initially, we conclude that Appellant's claim with respect to the *crimen falsi* stipulation has arguable merit and that trial counsel had no reasonable basis to enter into the stipulation. As Appellant explains in his brief, the offense as to which he was adjudicated delinquent, robbery of a motor vehicle, does not require the use of a firearm, or indeed any weapon. **See** 18 Pa.C.S. § 3702(a) ("A person commits a felony of the first degree if he steals or takes a motor vehicle from another person in the presence of that person or any other person in lawful possession of the motor vehicle."); **see also Commonwealth v. George**, 705 A.2d 916, 919-20 (Pa. Super. 1998) (listing elements of offense). "Rather, [] all that is necessary is that the defendant either take or exercise unlawful control over the operation of the vehicle, from the driver and in his presence, by means of force or intimidation." **Commonwealth v. Bonner**, 27 A.3d 255, 258 (Pa. Super. 2011) (quoting **George**, 705 A.2d at 920-21); **see also Commonwealth v. Jones**, 771 A.2d 796, 798-99 (Pa. Super. 2001) (finding evidence sufficient to establish conviction of robbery of a motor vehicle despite the absence of proof that the defendant was armed with a weapon).

Trial counsel acknowledged at the PCRA hearing that, at the time he entered into the stipulation, he was in possession of and had reviewed Appellant's juvenile criminal record. N.T., 9/13/19, at 18-20; PCRA Hearing

Exhibit P-1 (juvenile record report). Thus, trial counsel was aware that while Appellant had been charged with several firearm offenses in relation to the robbery incident, including possession of a firearm by a minor, the firearm charges were withdrawn and Appellant was only found delinquent of robbery of a motor vehicle. N.T., 9/13/19, at 19-20; PCRA Hearing Exhibit P-1. In addition, during Appellant's colloquy regarding his decision whether to testify at trial, trial counsel instructed him that the Commonwealth could raise his prior *crimen falsi* if Appellant testified, but counsel stated that the jury "won't get to hear the specifics of the case." N.T., 10/15/15, at 258.

Therefore, on these facts, it is clear that Appellant was found delinquent as a juvenile solely of the offense of robbery of a motor vehicle and the jury had no reason to learn of Appellant's arrest for firearm offenses from the same incident as the firearm charges were withdrawn. Moreover, trial counsel did not offer any strategy rationale for entering into the stipulation with the extraneous fact that Appellant was arrested for robbery "at gunpoint." N.T., 10/15/15, at 313.

Nevertheless, we agree with the PCRA court that Appellant was not prejudiced by the entry of the stipulation. Appellant's juvenile adjudication of a robbery offense was admitted for the limited purpose of rebutting his trial testimony. The trial court properly instructed the jury that they should not infer evidence of Appellant's guilt from the earlier offense and only use it to assess whether Appellant testified credibly and to determine the weight to be assigned to his testimony. N.T., 10/16/15, at 64. "The jury is presumed to

have followed the court's instructions." ***Chmiel***, 30 A.3d at 1147 (citation omitted). The issue of whether Appellant used a firearm in the commission of this offense was not relevant to the jury's determination of his credibility, and the stipulation to the use of the firearm did not appreciably prejudice him any more than the admission of the crime itself in light of the fact that the offense already implies the use of force or intimidation. ***Bonner***, 27 A.3d at 258. Therefore, we conclude that Appellant has not demonstrated that trial counsel's ineffectiveness in stipulating that Appellant had been arrested for robbery of a motor vehicle at gunpoint was not of such a magnitude that it could reasonably have affected the outcome of the proceedings. ***Jones***, 210 A.3d at 1019.

With respect to Appellant's claim that trial counsel was ineffective for not objecting to the prosecutor's depiction of Appellant as using a gun during the robbery in closing argument, the PCRA court's determination that trial counsel had a reasonable basis for withholding an objection to avoid emphasizing an irrelevant issue is supported by the record. Our Supreme Court has recognized that, where the prosecutor's argument is "insufficiently harmful," it is reasonable for defense counsel to not object to avoid "the inevitable highlighting of the remark which an objection would have created" and instead trust in the jury's ability to follow the court's charge that counsels' arguments are not evidence. ***Commonwealth v. Malloy***, 856 A.2d 767, 784 (Pa. 2004). Trial counsel explained at the PCRA hearing that the operative fact was the prior robbery adjudication, not whether a gun was used during

the commission of the robbery. N.T., 10/16/15, at 31-32, 47-49. Therefore, trial counsel felt that "once the robbery was out there, [he did not] believe it made much of a difference" whether the jury also heard that he was initially charged with using a gun during the commission of the offense. *Id.* at 48. In light of the trial court's proper instruction regarding the *crimen falsi*, trial counsel's strategy decision was reasonable. Appellant's second appellate issue therefore merits no relief.

In his third issue, Appellant argues that trial counsel was ineffective for failing to object to three portions of the prosecutor's closing argument. As our Supreme Court has explained, "[n]ot every unwise, intemperate, or improper remark made by a prosecutor mandates the grant of a new trial," and the "prosecutor may make fair comment on the admitted evidence and may provide fair rebuttal to defense arguments." ***Commonwealth v. Burno***, 94 A.3d 956, 974 (Pa. 2014) (citations omitted). The prosecutor is permitted to offer "reasonable deductions and inferences from the evidence [and] present his or her arguments with logical force and vigor, and comments representing mere oratorical flair are not objectionable." ***Id.*** (citation omitted). "Reversible error occurs only when the unavoidable effect of the challenged comments would prejudice the jurors and form in their minds a fixed bias and hostility toward the defendant such that the jurors could not weigh the evidence and render a true verdict." ***Id.*** (citation omitted).

Appellant identifies three statements in closing arguments that he claims constitute prosecutorial misconduct. First, Appellant argues that the

prosecutor's statement that R.S. has "probably been kicked around and looked down upon her whole life" and "probably been judged her whole life because of where she is in the socio-economic ladder because of perhaps some bad personal decisions she's made" caused the jury to believe R.S. out of pity rather than assessing the credibility of her testimony. N.T., 10/16/15, at 26. Appellant also argues that trial counsel was ineffective for failing to object to the argument to the jury that they "have the ability to make sure [Appellant] never claims a third victim" as it indicated that the jury bore responsibility for any future crime he committed if Appellant was acquitted. *Id.* at 48. Finally, Appellant argues that the prosecutor improperly invoked the September 11, 2001 terrorist attacks when discussing an individual's ability to clearly remember the key facts related to a significant past event and also when arguing that a box cutter can be a deadly weapon for the purpose of an aggravated assault with a deadly weapon charge. *Id.* at 29-30, 43. Appellant asserts that the prosecutor's discussion of the September 11th attacks was inflammatory and served to bias the jury against Appellant.

The PCRA court found that trial counsel was not ineffective in deciding not to object to the "strained analogies drawn by the prosecutor" as defense counsel reasonably "feared that objecting to dramatic rhetoric would highlight these statements to the jury." PCRA Court Opinion, 4/20/20, at 9. The PCRA court noted that the jury was instructed that counsels' arguments were not evidence and the jury was presumed to follow the court's instructions. *Id.*

The PCRA court's finding that trial counsel had a reasonable basis for his decision not to object to the Commonwealth's closing on the grounds that he did not want to highlight the prosecutor's arguments is supported by the record. *See Malloy*, 856 A.2d at 784. At the hearing on the PCRA petition, trial counsel explained that he was reluctant to object to the prosecutor's inappropriate comments because "the more you object you are sometimes highlighting what [the prosecutor is] saying" and causing the jury to "focus" on that argument. N.T., 9/13/19, at 29-30, 41. In addition, as the PCRA court noted, the jury was properly instructed at trial that they were solely responsible for weighing the evidence and deciding the case and that they were not bound by counsels' recollection of the evidence. N.T., 10/16/15, at 59-60.

We further conclude that none of Appellant's claims of prosecutor misconduct has arguable merit as they would not have caused the jury to "form in their minds a fixed bias and hostility toward [Appellant] such that the jurors could not weigh the evidence and render a true verdict." *Burno*, 94 A.3d at 974 (citation omitted). The prosecutor's comments regarding R.S. being "judged" and "looked down" upon based upon her socio-economic status, N.T., 10/16/15, at 26, was based on R.S.'s detailed testimony regarding her difficult childhood and her financial struggles leading her to turn

to prostitution.[13]  In addition, the comments were a fair response to defense counsel's attack on R.S.'s credibility in his closing based on R.S.'s admission on cross-examination that she did not inform emergency personnel on the day of her assault of her financial arrangement with Appellant because she did not want to be judged based on her decision to offer sex in exchange for money. N.T., 10/15/19, at 120-21, 125-26; N.T., 10/16/15, at 21-23; *see also* *Burno*, 94 A.3d at 974 (as long as prosecutor does not assert his personal opinions, he may, within reasonable limits, comment on the credibility of a witness).

In addition, the prosecutor's statement that the jury had the ability to convict Appellant to prevent him from taking another victim did not deny Appellant a fair trial as the prosecutor did not imply that Appellant should be convicted based on his prior misdeeds or that the jury should convict Appellant to send a message to a wider audience.[14]  *Burno*, 94 A.3d at 974; *Malloy*,

_____

[13] R.S. grew up in a refugee camp in Ghana and lived in at least four states after her family emigrated to the United States.  N.T., 10/15/19, at 49-51. She became pregnant at 15 and had three children by the time of the sexual assault in 2013, when she was 20 years old; however, her children were removed from her care by Children and Youth Services based upon marijuana use. *Id.* at 49, 51-52.  R.S. dropped out of high school after getting pregnant and had obtained work cleaning schools, but had been laid off from her job two months prior to the assault. *Id.* at 51-54.  She stated that at the time of the assault she needed money to stay in her house so that she could be reunited with her children. *Id.* at 54-55.

[14] We note that while the prosecutor referenced Appellant's 2008 convictions for attempted indecent assault and aggravated assault with a deadly weapon, this evidence had been admitted by stipulation into the record.  N.T.,

856 A.2d at 783. Similarly, the prosecutor's reference to the September 11th terrorist attacks would not have inflamed the jury's passions against Appellant as the incident that led to Appellant's convictions bore no similarity to the September 11th terrorist attacks aside from the fact that Appellant was armed with a box cutter. The prosecutor's reference to the terrorist attacks therefore constituted "mere oratorical flair" that is permitted of counsel in their arguments. **Burno**, 94 A.3d at 974 (citation omitted). Appellant's third issue therefore merits no relief.

In his final issue, Appellant contends that, even if the previously addressed claims of ineffective assistance of counsel are not individually found to have merit, the "cumulative prejudice" of these errors when viewed collectively nevertheless entitles him to relief. Appellant's Brief at 37.

Our Supreme Court has held that in general "no number of failed ineffectiveness claims may collectively warrant relief if they fail to do so individually." **Commonwealth v. Elliott**, 80 A.3d 415, 450 (Pa. 2013). However, when multiple ineffective assistance claims failed based upon a finding of a lack of prejudice, "then the cumulative prejudice from those individual claims may properly be assessed." **Id.** The Court has cautioned that "nothing in our precedent relieves an appellant who claims cumulative

---

10/15/15, at 246-47; Trial Exhibit C-37. Trial counsel's error was in not objecting to the introduction of the prior bad act evidence in the first instance. **See supra**. Once the evidence was admitted, the prosecutor was permitted to comment on this evidence. **Burno**, 94 A.3d at 974.

prejudice from setting forth a specific, reasoned, and legally and factually supported argument for the claim." ***Commonwealth v. Hutchinson***, 25 A.3d 277, 319 (Pa. 2011). "A bald averment of cumulative prejudice does not constitute a claim." ***Id.***

We concluded above that Appellant's ineffective assistance claims regarding the prior bad acts stipulation and the *crimen falsi* stipulation individually did not prejudice Appellant and do not warrant relief. Even when we view the prejudice from these claims in the aggregate, we do not find that that there is a reasonable probability that the outcome of Appellant's trial would have changed. Moreover, Appellant merely postulates his entitlement to relief based upon a cumulative prejudice theory in his brief, and he has not offered "a specific, reasoned, and legally and factually supported argument" as to how the prejudice from the separate ineffectiveness claims interacted to deny him the right to a fair trial. ***Hutchinson***, 25 A.3d at 319. Therefore, Appellant is not entitled to relief under a cumulative prejudice analysis. Accordingly, we affirm the PCRA court's denial of Appellant's petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/8/21